Judge Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR10-385RSL |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| v. | ) | |
| | ) | |
| DELBERT LEE WHETSTONE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  INTRODUCTION

The United States agrees with the Probation Officer that a sentence of 36 months in prison is the appropriate sentence in this case in which the defendant, a physician, repeatedly prescribed the powerful narcotic OxyContin without a medical justification and then attempted to hide the cash proceeds from his lucrative but largely illicit practice from the Internal Revenue Service.  The sentence would recognize the seriousness of these offenses in which the defendant abused his authority as a physician to prescribe, in exchange for cash, valuable OxyContin pills that often were either abused by his addicted "patients" or resold by street-level dealers to other addicts.  The sentence would also deter other medical professional who might be tempted to completely abdicate their professional roles as physicians in order to illegitimately sell their access to drugs.

## II.  OFFENSES OF CONVICTION

The defendant has pleaded guilty to one count of distribution of a controlled

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  substance without a legitimate medical purpose in violation of 21 U.S.C. § 841(a)(1) and

2  structuring a financial transaction to avoid a reporting requirement in violation of 31

3  U.S.C. § 5324(a)(3).  The drug offense is based on the defendant's prescriptions to a

4  patient who actually was working on behalf of the Drug Enforcement Administration and

5  was wearing recording equipment during his encounters with the defendant.  The

6  financial offense is based on the defendant's cash deposits in August, 2010, that he

7  structured to each be under the $10,000 reporting threshold so that the financial

8  institution would not file a report with the Treasury Department.

9  ### III.  PLEA AGREEMENT

10      The defendant pleaded guilty to the two offenses described above pursuant to a

11  plea agreement.  The defendant and the government did not reach any agreement on the

12  appropriate Sentencing Guidelines calculations.  *See* Plea Agreement at 5, ¶ 7.  The

13  defendant admitted facts sufficient to support the pleas to the specific counts alleged.  *See*

14  Plea Agreement at 7, ¶ 12.  The parties did not agree on the extent that additional conduct

15  should be considered relevant conduct under the Guidelines.  The plea agreement made

16  clear that the government contemplated producing evidence that the "defendant treated

17  additional patients who obtained prescriptions for drugs containing oxycodone and other

18  medications . . . includ[ing] evidence that those prescriptions were outside the scope of

19  professional practice and not for a legitimate medical purpose."  *Id.*  The voluminous

20  additional information has been summarized in the Presentence Report.

21      The government agreed to ask for a sentence of no more than 36 months while the

22  defendant agreed to ask for a sentence of no less than 18 months in prison.  *See* Plea

23  Agreement at 5, ¶ 7.

24  ### IV.  SENTENCING GUIDELINES

25      The government agrees with the Sentencing Guidelines calculations in the

26  Presentence Report.  As for the drug offense calculation, the primary factor is the quantity

27  of controlled substances involved.  The probation officer succinctly stated the challenge

28  as follows:  "The issue is particularly difficult as the defendant was a licensed medical

GOV'T SENTENCING MEMORANDUM/ - 2
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

doctor, and clearly had patients to whom he prescribed pain medication in a manner that may have been disorganized and not properly documented, but not criminal in nature." However, considering the statements of various witnesses and the experience of the "patient" working on behalf of the DEA, the probation officer properly concluded that a "significant portion of the defendant's practice involved the unlawful distribution of opiate medications." *See* PSR at 8, ¶ 27.  The Guidelines direct that where a precise amount of relevant controlled substances cannot be determined, the Court should "approximate the quantity of controlled substance" using information such as financial records, similar transactions by the defendant, and the like.  *See* U.S.S.G. § 2D1.1, Application Note 12.

The government agrees with the probation officer's characterization of his estimate as "conservative" and the benefit of the doubt clearly has been provided to the defendant.  Even with those qualifiers in defendant's favor, the relevant numbers are shocking and show the extent to which the defendant's practice had deteriorated to a drug mill.  A DEA compilation of prescription records showed that the defendant issued 5,189 prescriptions for oxycodone products in just ten months in 2009 providing for a total of 308,466 tablets.  The probation officer conservatively considered only the 80mg version (popular for illicit street sales) of the OxyContin brand of oxycodone in his calculations, leaving out other forms of oxycodone, other opiates, and other pill sizes.  With those limitations, the DEA compilation of prescription records showed that the defendant prescribed an astonishing 87,977 such pills in just ten months in 2009.  To put that number in perspective, the Providence Regional Medical Center, Everett's largest hospital, ordered only 13,400 of those tablets during the same time period.  *See* PSR at 5, ¶ 11.

//

//

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

The following chart, taken from the affidavit of DEA Special Agent Thomas Clemen filed in this case supporting the issuance of search warrants, shows a summary of pills prescribed by the defendant compared to the medical center pharmacies during the relevant period:

| OxyContin strength | Number of tablets prescribed by WHETSTONE | Estimated number of tablets ordered by Medical Center pharmacies |
|---|---|---|
| 10 mg | 608 | 7,887 |
| 15 mg | | 1,706 |
| 20 mg | 12,770 | 9,834 |
| 30 mg | 28 | 666 |
| 40 mg | 28,331 | 1,872 |
| 60 mg | 626 | 83 |
| 80 mg | 87,977 | 5,674 |

If, based on statements from office staff, patients, and a medical expert, only half of those 80 mg pills prescribed by the defendant are counted for Guidelines purposes, the total is still 3,519 grams of oxycodone.  Under the Guidelines, as shown by the probation officer's calculations, that amount of oxycodone would be equivalent to 23,577 kilograms of marijuana, which in turn would result in an offense level of 36.

Based on the evidence in this investigation, the government agrees with the probation officer that such a calculation conservatively estimates the controlled substances involved in the defendant's offense.

The defendant, however, has challenged the accuracy of that estimate.  Pursuant to Rule 32(i)(3) of the Federal Rules of Criminal Procedure, the Court must rule on any dispute that could affect sentencing.  In this case, the government stands ready, if the Court desires, to call witnesses including an expert physician retained by the government

GOV'T SENTENCING MEMORANDUM/ - 4
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   who evaluated five patient files to support the contested evidence.

2         Given, however, that the sentence recommended by both the government and the

3   probation officer is substantially below the Sentencing Guidelines range implicated by the

4   above estimate, the government suggests that such an expenditure of resources may not

5   be necessary and that in this case the Court may make an appropriate finding based on the

6   reasonably reliable evidence before it.

7         First, the defendant has admitted improperly prescribing 6.72 grams of oxycodone

8   to the single patient sent in by the DEA.  This amount alone, using the Guidelines formula

9   of converting to marijuana weight at a ration of 6,700 to one, would result in an

10  equivalent marijuana weight of approximately 45 kilograms, which would lead to an

11  offense level of 20.  And this is for only the one patient.  That patient, whose visits were

12  recorded, showed in vivid detail the defendant's fraudulent medical practice.  The

13  defendant never actually physically examined the patient, although the defendant falsely

14  entered in his patient chart that he did.  The patient's second encounter with the defendant

15  lasted only 49 seconds, and his third encounter lasted only one minute and 12 seconds,

16  again with no physical examination whatsoever despite contrary entries in the patient

17  chart.  This experience with sham examinations leading to oxycodone prescriptions is

18  consistent with experiences reported by other patients as summarized in the search

19  warrant affidavit in this case as well as the Presentence Report.

20        This indisputable video evidence, when contrasted with the phony entries in the

21  defendant's patient charts, corroborates other patient reports of similar irregularities

22  leading inevitably to repeated oxycodone prescriptions, which often led to oxycodone

23  being illicitly sold on the street as detailed in the Presentence Report.

24        Clearly, the evidence shows that the defendant's relevant conduct exceeded the

25  oxycodone prescribed to the one patient where there was video evidence.  Even adding

26  just pills found on one of the defendant's patients when agents arrested him for drug

27  dealing as described in paragraph 14 of the Presentence Report would add 41 80mg

28  OxyContin pills, or 3.28 additional grams of oxycodone.  That would increase the offense

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    level to 22, just based on that one additional seizure.  And even the defendant, who is

2    minimizing his conduct in the government's view, agrees that there were multiple

3    "instances" of improper prescriptions, with the caveat that they were "rare indeed."

4    Defendant's Objections at 4, ¶ 15.

5            The probation officer is correct that any offense level should be increased by two

6    levels under U.S.S.G. § 3B1.3 for abuse of a position of trust and use of a special skill.

7    The defendant's position as a physician obviously "significantly facilitated" the

8    commission of the offense because such specialized medical authority if required to issue

9    prescriptions.

10           Again, just referring to those two patients, with an addition of two levels for an

11   abuse of trust as described above, would lead to an offense level of 24.  With credit for

12   acceptance of responsibility and "safety valve" credit, the final offense level under that

13   scenario would be 19.  That in turn would lead to a Guidelines range of 30-37 months,

14   which would encompass the recommendation by the government and the probation

15   officer.

16           Clearly, as shown by the facts summarized in the Presentence Report, the

17   defendant is responsible for significant additional quantities of improperly prescribed

18   controlled substances.  But the above analysis shows that the sentence recommended by

19   the government and the probation officer is within a Guidelines range that contemplates

20   only the limited amounts of oxycodone linked to just two patients.  The government's

21   recommendation is eminently reasonable.

22                         **V.  STATUTORY SENTENCING FACTORS**

23           Although the Court is required to establish an advisory Sentencing Guidelines

24   range, the sentence ultimately is governed by all of the factors set forth in 18 U.S.C. §

25   3553(a).

26           In this case, the government's recommended sentence would be sufficient, but not

27   greater than necessary, to satisfy those factors.  Of particular importance in this case is the

28   need of the sentence to reflect the seriousness of the offense and to provide adequate

1     deterrence to others.

2          It is hard to overstate the seriousness of the conduct in this case.  As the Court

3     knows from the depressingly large number of illicit oxycodone cases brought in both state

4     and federal courts, oxycodone and other similar opiates are an extreme danger to the

5     public when distributed and used without proper medical supervision.

6          With appropriate and careful medical supervision, the drugs can vastly improve the

7     quality of life of patients suffering from extreme pain.  Without appropriate supervision,

8     however, the drugs can lead to addiction and dangerous overdoses.  In this case, the

9     defendant, as a physician, knew far better than the typical drug dealer the dangers of the

10    substances he was so cavalierly distributing.  But his motivation was clear:  There was

11    money to be made, and to further aggravate his offense, he took careful steps to hide his

12    large cash transactions from the taxing authorities and went so far as to hide hundreds of

13    thousands of dollars in cash in a storage unit.

14         The amount of drugs involved here simply is staggering.  The precise human toll

15    of all of those thousands and thousands of powerful narcotics released to the street thanks

16    to the defendant of course can never be known, but surely is horrific.

17         The other especially important factor in this case is the deterrence of others.  As

18    the defendant has shown, providing quick prescriptions without medical justification can

19    be financially lucrative.  Others with similar authority must be aware of the consequences

20    of grossly abusing that authority.  What the defendant did in this case did not amount to

21    simply a good faith disagreement about a proper course of medical treatment including

22    prescription of opiates.  The evidence shows that the defendant completely abdicated his

23    trusted role as a medical provider and became a drug dealer as surely as the dealers on

24    street corners.

25         In determining its recommendation, the government has considered the

26    defendant's background and lack of any significant criminal history.  It also seems clear

27    that the defendant, at least for some patients, did provide valued medical services.  But at

28    least in his most recent years of practice, that work was subsumed by a practice in which

GOV'T SENTENCING MEMORANDUM/ - 7
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  people who wanted narcotics simply had to pay the cash.

2  **VI.  CONCLUSION**

3      For all of the above reasons, the government respectfully recommends a sentence

4  of imprisonment of 36 months to be followed by three years of supervised release.

5

6      DATED this 11th day of June, 2011.

7

8                              Respectfully submitted,

                            JENNY A. DURKAN

9                              United States Attorney

10                              MARK PARRENT

11                              Assistant United States Attorney

                            CA Bar # 159755

12                              United States Attorney's Office

                            700 Stewart Street, Suite 5220

13                              Seattle, Washington 98101

                            Telephone: (206) 553-4113

14                              Fax: (206) 553-4440

                            E-mail: Mark.Parrent2@usdoj.gov

15

16                              RICHARD E. COHEN

                            Assistant United States Attorney

17                              United States Attorney's Office

                            700 Stewart Street, Suite 5220

18                              Seattle, Washington 98101

                            Telephone:  206-553-2242

19                              Fax:  206-553-6934

                            E-Mail:

20                              Richard.E.Cohen@usdoj.gov

21

22

23

24

25

26

27

28

GOV'T SENTENCING MEMORANDUM/ - 8
Case No. CR10-385RSL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on June 11, 2012, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing

4   to the attorney(s) of record for the defendant(s).  I hereby certify that I have served the

5   attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.

6

7

8                                  s/ Judy St. John
                                   JUDY ST. JOHN

9                                  Legal Assistant
                                   United States Attorney's Office

10                                 700 Stewart Street, Suite 5220
                                   Seattle, Washington 98101

11                                 Phone: (206) 553-4439
                                   FAX:   (206) 553-4440

12                                 E-mail: Judy.Stjohn@usdoj.gov

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28